STATE OF MICHIGAN
COURT OF APPEALS

RODD MONTS,

        Plaintiff-Appellant,

v

DETROIT PUBLIC SCHOOL DISTRICT,

        Defendant-Appellee.

UNPUBLISHED
January 5, 2016

No. 321790
Wayne Circuit Court
LC No. 13-011037-CZ

Before: RONAYNE KRAUSE, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

The Freedom of Information Act, MCL 15.231 *et seq.*, requires a public body to make available certain public records on written request. To trigger this disclosure obligation, a person must describe the information sought "sufficiently to enable the public body to find the public record[.]" MCL 15.233(1). The Detroit Public School District concluded that plaintiff Rodd Monts' FOIA request seeking "the total number of student discipline matters that have been referred to" the District's police department or the Detroit Police Department could not be fulfilled, as the District does not "refer" disciplinary matters to the police. Monts challenged this finding by filing suit. Adopting the District's reasoning, the circuit court granted summary disposition in favor of the District.

We hold that the District unreasonably interpreted plaintiff Rodd Monts' FOIA request, as information routinely collected by the District specifically denotes whether "police [were] involved" in matters resulting in student discipline, and the District's data separately identifies incidents reported to the public by school officials. Plaintiff's request sufficiently informed the District that the information sought could be found within its records. We reverse.

I.

Plaintiff Rodd Monts is employed by the American Civil Liberties Union of Michigan as its "Field Director." In that capacity, Monts mailed a FOIA request to the District's FOIA coordinator seeking information regarding the relationship between student discipline in the Detroit Public Schools and police involvement in matters giving rise to disciplinary actions. Monts sought five different categories of information, which his FOIA request described as follows:

-1-

This request concerns all middle schools and high schools within the Detroit Public School District. *Please produce the following records retained in DPS Forms 4549,* Forms A-N and all other locations:

1.　　The total number of students who have been suspended or expelled during the past three academic years, categorized by: school, grade, incident date, race or ethnicity of the student, incident type (e.g., weapons, assaults, etc.), school hearing date, penalty imposed, penalty start date, expulsion hearing date, attendance return date and current outcome.

2.　　The total number of student discipline matters that have been referred by school officials to DPS Police Department officials during the past three academic years, categorized by: school, grade, incident date, race or ethnicity of the student, and incident type.

3.　　The total number of student discipline matters that have been referred by school officials to the Detroit Police Department or other law enforcement agencies during the past three academic years, categorized by: school, grade, incident date, race or ethnicity of the student, and incident type.

4.　　All policies, procedures, memos, minutes, and other documents that govern school suspensions and expulsions, including policies and procedures relating to disciplinary hearings and all policies and procedures addressing the referral by school officials or student discipline matters to law enforcement offiicals.

5.　　The total number of students that have been referred by school officials to any program designed specifically as an alternative to suspension or expulsion, including in-school suspensions, restorative practices, positive behavior support initiatives, or similarly designed programs, and any documentation of outcomes from said alternative discipline programs; during the past three academic years, categorized by: program, school, grade, race or ethnicity, and gender. [Emphasis added.]

Monts closed his letter by stating: "If there are any questions or you require further information about this request, please contact me at [telephone number omitted]. Thank you for your courtesies and cooperation."

Pursuant to the FOIA, the District was obligated to respond to Monts' request within five business days. MCL 15.235(2). On the seventh business day, the District sought a 10-day extension under MCL 15.235(2)(d).[1] After the extension period expired, the District's FOIA coordinator informed Monts: "I've been informed that additional time is needed to make every

---

[1] MCL 15.235 was amended effective July 1, 2015. 2014 PA 563. Subsection (2) of MCL 15.235 was not affected.

effort to comply with your request; therefore, the District is requesting an additional extension [of fifteen days]." Fifteen days came and went, with no information produced. After some prodding from Monts, the District finally responded—just short of two months after its disclosure was due. The District granted Monts' request for the information summarized in the first paragraph of his request, promised that the information in paragraphs four and five would be provided at a later date, and denied the information sought in paragraphs two and three, averring: "the requested information does not exist."

Thus, the District supplied Monts with records reflecting the number of students suspended or expelled during the preceding three academic years, categorized in the specific manner Monts desired. The District pledged that it would later produce its policies and procedures relating to disciplinary hearings and, notably, those "addressing the referral by school officials or student discipline matters to law enforcement," as well as data reflecting the number of students "referred by school officials" to programs intended as alternatives to suspension or expulsion. The District claimed that records regarding student discipline matters "that have been referred by school officials" to police authorities did not exist.

A few weeks later, the District fulfilled its promise to provide Monts with the policies and procedures described in the fourth paragraph of his request. The documents included Form 4549, which Monts had specifically referenced in his initial FOIA request. The information contained within form 4549 concerns "disciplinary action" involving students and the "offense date," "type of behavior," and "offense code." The form also includes the job description of the person who reported the "offense" and whether the police were "involved":

The District also produced form 63, titled: "Undesirable Incident Report." A "principal, security officer and others making a written report" fills out this form when an "undesirable incident" occurs. The form provides that "[a]ll serious cases involving police must be reported." Spaces on the form seek information regarding the "[t]ype of [i]ncident" and the "[p]olice [i]nvolved."

Monts appealed the District's refusal to produce materials responsive to requests two and



three.[2] As to the latter, Monts' appeal letter maintained:

> With regard to the denials of requests 2 and 3 dealing with police referrals to DPS and Detroit police on the ground that the information does not exist, the ACLU would point out that the DPS Form 63 "Undesirable Incident Reports" includes a check box for police involvement by "In-school' or "Precinct" officers. The ACLU requests reversal of the denials for the reason that *the requested information does exist in the Undesirable Incident Reports and elsewhere.* The required completion and submission of these forms indicates a process for collection of the requested information, thus the contents of the forms collected during the parameters of the original request should be forwarded to us in an expeditious manner. [Emphasis added.]

The District upheld its denial of the information sought in paragraphs two and three, reiterating that "the requested information does not exist." Monts then filed this civil action.

Monts' complaint recites the facts we have summarized above, and adds two salient references. The first is MCL 380.1310a, which requires that school boards report annually to the superintendent of public instruction "incidents of crime occurring at school within the school district." The report must include "at least crimes involving physical violence, gang-related activity, illegal possession of a controlled substance or controlled substance analogue, or other intoxicant, trespassing, and property crimes including, but not limited to, theft and vandalism." MCL 380.1310a(2). Monts' complaint also indicates that DPS police leadership had assured Monts that such information was tracked on a regular basis. Supporting that claim, Monts attached a 2013 memorandum prepared by Inspector Michael Walsh of the Detroit Public Schools which summarizes the "[p]olice [r]eports processed" during the 2013 school year, the number of persons (adults and juveniles) arrested, and the "[c]rimes reported to [the Detroit Public Schools Police Department] this . . . school year (based on reports received)." The list identifies the number of each particular crime (such as "[r]obbery [a]rmed" and "[n]arcotics [i]ncidents") reported.

Approximately two months after Monts filed his complaint, the District's counsel produced new material "in response to Item #2" of Monts' original FOIA request. One of the documents, identified in the record as exhibit 10 to the District's summary disposition motion, details the circumstances surrounding the expulsion of dozens of students. The list sets forth each expelled student's birth date, grade, school, and the nature and date of the "incident." According to the exhibit, each of the incidents listed relates to criminal conduct. A second document (exhibit 7) lists the dates of particular crimes, the school at which the crime occurred, and includes information regarding whether an arrest was made.

---

[2] MCL 15.240(1) permits a requesting party to appeal a public body's "final determination to deny all or a portion or a request[.]" Within 10 days of the appeal, the public body must reverse its decision, "issue a written notice to the requesting person upholding the disclosure denial," or reverse the disclosure denial in part. MCL 15.240(2). Amendments that took effect on July 1, 2015, clarify that the public body has "10 business days" to reach its decision. 2014 PA 563.

The District moved for summary disposition under MCR 2.116(C)(8) and (10), asserting that "a reasonable search for the requested records was made, however, the records requested in Paragraphs 2 and 3 do not exist."[3] According to the District's brief, the information contained in its forms, including Form 4549, did not relate to "student discipline matters" that had been "referred" to a police authority. Monts filed a cross-motion for summary disposition, contending that the information he sought was readily retrievable from forms 4549 and 63 and the reports generated pursuant to MCL 380.1310a. Further, Monts contended, the information provided after the lawsuit commenced was responsive to his FOIA request, and should have been produced in a timely fashion.

The circuit court ruled that Monts' request was not "clear," and that the District was "kind of hamstrung on exactly what was requested." The information eventually produced, the court determined, "wasn't necessarily responsive" to Monts' request, thereby precluding summary disposition in Monts' favor. The court instead granted summary disposition to the District. Monts now appeals.

II.

This FOIA dispute involves whether the District complied with its FOIA obligations when it denied paragraphs two and three of Monts' request on the ground that responsive information did not exist. Because this issue comes to us by way of a grant of summary disposition under MCR 2.116(C)(10), we review de novo whether an appropriate factual basis supported the circuit court's ruling. See *Coblentz v Novi*, 475 Mich 558, 567-568; 719 NW2d 73 (2006). We review de novo whether the circuit court properly interpreted the FOIA. *Herald Co, Inc v Eastern Michigan Univ Bd of Regents*, 475 Mich 463, 470; 719 NW2d 19 (2006). The burden rests on the District to justify its refusal to produce information responsive to Monts' request. *Herald Co v Bay City*, 463 Mich 111, 119; 614 NW2d 873 (2000). The District's "burden is a 'heavy' one," and it is the duty of this Court to determine whether it has been met. *United Plant Guard Workers of America v Dep't of State Police*, 118 Mich App 292, 295; 324 NW2d 611 (1982).

III.

The FOIA requires public bodies to grant "a written request that describes a public record sufficiently to enable the public body to find the public record[.]" MCL 15.233(1). This obligation correlates with FOIA's "broadly declared legislative policy" of "full disclosure of public records" sought by an interested citizen. *Herald Co*, 463 Mich at 118. In *Herald Co*, our Supreme Court explained that "the FOIA is a prodisclosure statute" that "does not establish detailed requirements for a valid request." *Id*. at 119-120. The Court emphasized that consistent with the Act's stated purpose affording inquiring persons "full and complete information

---

[3] Defendant filed two affidavits signed by employees who averred that they "made a reasonable search for the records requested" in Monts' FOIA request, but that "[t]he records requested do not exist and the information requested is not stored in any database maintained by the Detroit Public Schools' Office of Code of Conduct" or its "Police Department."

regarding the affairs of government," the Legislature elected against imposing "detailed or technical requirements as a precondition for granting the public access to information. Instead," the Court continued, "the Legislature simply required that any request be sufficiently descriptive to allow the public body to find public records containing the information sought." *Id.* at 121 (quotation marks and citation omitted).

The question in this case is whether the following two paragraphs of Monts' request "sufficiently" described information within the District's possession:

Please produce the following records retained in DPS Forms 4549, Forms A-N, and all other locations:

* * *

2. The total number of student discipline matters that have been referred by school officials to DPS Police Department officials during the past three academic years, categorized by: school, grade incident date, race or ethnicity of the student, and incident type.

3. The total number of student discipline matters that have been referred by school officials to the Detroit Police Department or other law enforcement agencies during the past three academic years, categorized by school, grade, incident date, race or ethnicity of the student, and incident type.

Monts points out that information could have been gathered from the District's own forms, which contain information directly relevant to the number of "student discipline matters . . . referred by school officials" to either the Detroit Police Department or the DPS Police Department. Essentially, Monts contends, the information he sought was that which MCL 380.1310a required the District to gather and report. Monts highlights that he conveyed this point to the District in his appeal by stating:

The ACLU requests reversal of the denials for the reason that the requested information does exist in the Undesirable Incident Reports and elsewhere. The required completion and submission of these forms indicates a process for collection of the requested information, thus the contents of the forms collected during the parameters of the original request should be forwarded to us in an expeditious manner.

The District insists that the forms "do *not* delineate whether the offenses were committed by *students* and whether *students received discipline*." (Emphases in original.) Moreover, the District insists, "[s]tudent discipline matters are not referred to the police department," and therefore no connection exists between student discipline matters and the police.

Our review of the District's forms and the information belatedly produced resolves this dispute. The heading for form 4549 describes the form's contents as "Detroit Public Schools Student Code of Conduct Disciplinary Action." The information compiled on the form includes the "school's name," the "student's name," the "offense date," and the "offense code." The person completing the form must indicate by checking "yes" or "no" whether there were "police

involved" in the "disciplinary action." Plainly, this form relates directly to "disciplinary action" involving students and the police. Form 63, headed "Detroit Public Schools Undesirable Incident Report," similarly requires the person filling in the blanks to state whether police were "[i]nvolved," and if so, to check a box for "[i]n-school [o]fficer," "[o]ther," or "[p]recinct [c]all." Production of these two forms (with any personal information redacted) would have satisfied Monts' request. In other words, the information Monts sought in paragraphs two and three of his FOIA request existed on the District's forms.

Moreover, the two data summaries provided to Monts after the litigation commenced delineate information directly relevant to paragraphs two and three of Monts' FOIA request. Exhibit 10 lists "school discipline matters" organized by "school, grade, incident date . . . and incident type." Exhibit 7 is broader, in that it summarizes crimes committed by students and non-students on school property. The two exhibits plainly fell within the ambit of Monts' FOIA request. The District has offered no explanation for its failure to timely produce these data compilations in response to Monts' FOIA request rather than well after litigation was underway. Accordingly, the circuit court erred in concluding that the District's submission of these documents was unresponsive to Monts' request and that the documents were therefore irrelevant.

We cannot accept the District's hyper-technical claim that because its schools did not "refer" disciplinary matters to police authorities, it was under no obligation to provide Monts with the documents ultimately produced, or redacted copies of forms 4549 and 63. In *Coblentz*, 475 Mich at 572, our Supreme Court rejected a similar argument, observing that the defendant's "restrictive reading of the FOIA request" was "not consistent with the language of the act." The Court emphasized that the FOIA is a user-friendly statute, intended as an easily-opened gateway to public information: "All that a request must accomplish is to describe the record 'sufficiently' to enable the public body to identify it." *Id.* The Court continued:

> The Legislature chose not to require an exacting standard in MCL 15.233(1). It could have required a "written request that describes a public record precisely or fully." But, instead, the Legislature chose to use the lesser standard of "sufficiently." The words chosen by the Legislature are presumed intentional. We will not speculate that it used one word when it meant another. [*Id.*]

Monts' description of the information he sought was not perfect, in that "student discipline matters" such as the decision whether to expel or suspend a student are the business of the school, and are not "referred" to the police. But successful use of the FOIA does not depend on drafting lawyerly requests. In common-sense, everyday parlance, Monts' request obviously sought matters of student discipline in which the police had become involved through referral by a school employee. This is precisely the information contained within forms 4549 and 63. Had the District produced the forms in addition to the documents it eventually ceded, it would have fulfilled its FOIA obligation.[4]

---

[4] In this regard we respectfully disagree with our dissenting colleague's characterization of the facts as an "extrapolation." The District was well aware that some disciplinary actions wound up

The District's rigid, mechanical approach to Monts' FOIA request runs counter to the letter of MCL 15.233(1), and the prodisclosure spirit of the act. Monts' appeal further sufficed to notify the District that its own forms constituted the public records that would satisfy his request. That Monts' language may have been somewhat imprecise does not justify the District's refusal to make a good faith effort at compliance, or to call to Monts' attention that the District was confused about his use of the term "referred."

In summary, paragraphs two and three of Monts' FOIA request, combined with the explanation he provided on administrative appeal, sufficed to allow the District to find the information Monts sought. That the original request itself identified form 4549, and Monts later informed the District that form 63 also contained the information he wanted, buttresses our conclusion. The District's failure to allow Monts access to redacted copies of forms 4549 and 63, and to timely produce the exhibits it eventually provided, violated the FOIA. Accordingly, the circuit court erred by failing to grant summary disposition in Monts' favor.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens

---

as police referrals. Monts sought the forms reflecting which disciplinary matters were reported to the police. No guesswork was required.